UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 400 EAST 62ND PROPERTIES, LLC,<br><br>         Plaintiff,<br><br>-against-<br><br>GRUPO CINEMEX, S.A. DE C.V.,<br><br>         Defendant. | Case No. 1:20-cv-04917 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

  This case arises out of a commercial lease gone awry between landlord 400 East 62nd Properties, LLC ("Plaintiff") and tenant Cinemex East 62nd Street, LLC ("Tenant"), a nonparty seeking to operate a movie theatre at the subject premises. Plaintiff brings this action to recover monies allegedly owed by Grupo Cinemex, S.A. DE C.V. ("Grupo Cinemex" or "Defendant"), a Mexican entity, for breach of a guaranty agreement executed in connection with that commercial lease. According to Plaintiff, Grupo Cinemex is on the hook for the Tenant's rental payments, which the tenant ceased making once COVID-19 descended on New York City. Grupo Cinemex now moves, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and Rule 12(b)(6), to dismiss the Second Amended Complaint for a lack of subject matter jurisdiction and failure to state a claim, respectively. For the reasons set forth below, Grupo Cinemex's motion to dismiss under Rule 12(b)(1) is GRANTED.

## BACKGROUND[1]

  Plaintiff is a New York limited liability company ("LLC") with its principal place of business in Newark, New Jersey. Dkt. 101 ("Second Amended Complaint" or "SAC") ¶ 3.

---

[1] The facts described herein "derive principally from the complaint, the notice of removal, and the briefing on the instant motion seeking remand." *Westchester County v. Mylan Pharms., Inc.*, 737 F. Supp. 3d 214, 217 (S.D.N.Y. 2024) (quoting *Ohno Enters. v. Allen*, No. 15-cv-06675 (KAM) (RER), 2016 WL 3512176, at *1 (E.D.N.Y. June 22, 2016)).

Grupo Cinemex is a corporation organized under the laws of Mexico, with its principal place of business in Mexico City, Mexico. SAC ¶ 16. On or about October 1, 2016, Plaintiff and Tenant entered into a commercial lease agreement for certain space at 400 East 62nd Street, New York, New York, for use primarily as a movie theater. SAC ¶ 21.

On October 27, 2016, Grupo Cinemex executed a written guaranty of payment and performance (the "Guaranty"), whereby Grupo Cinemex "unconditionally and irrevocably guaranteed to [Plaintiff] the full and timely payment by Tenant of all its obligations under the Lease." SAC ¶¶ 33-34; *see also* Dkt. 104-2 ¶ 1. On or about April 1, 2020, Tenant ceased making rent payments under the lease. SAC ¶ 44. Later that month, on April 25, 2020, Tenant commenced a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Southern District of Florida. *See In re Cinemex USA Real Est. Holdings, Inc.*, No. 20-bk-14695 (Bankr. S.D. Fla. filed Apr. 25, 2020); *see also* SAC ¶ 45.

On June 26, 2020, Plaintiff commenced this action to recover rent payments under the Guaranty, as well as attorneys' fees and expenses incurred in enforcing the Guaranty. *See generally* Dkt. 6. On January 12, 2024, Grupo Cinemex filed a motion to dismiss the Complaint, based in part on alleged jurisdictional defects. Dkt. 53. In response, Plaintiff filed an Amended Complaint. Dkt. 62. Grupo Cinemex then moved to dismiss the Amended Complaint, Dkt. 65, at which time Plaintiff sought leave to file a second amended complaint, Dkt. 70. On November 1, 2024, this Court granted Plaintiff's motion to amend. Dkt. 94 ("Tr."). In so ruling, the Court rejected Grupo Cinemex's argument that amendment would be futile because it would not cure Plaintiff's deficient allegations of diversity jurisdiction. Although the Court flagged potential jurisdictional issues based on Plaintiff's downstream membership, it concluded "that the ultimate inquiry of jurisdiction is best decided in the

context of Group Cinemex's almost certainly forthcoming motion to dismiss the anticipated second amended complaint." Tr. at 44:10-24; *see also* Tr. at 42:9-21.[2]

Which brings us to the present procedural posture. On December 4, 2024, Plaintiff filed its Second Amended Complaint, *see* SAC, and on January 15, 2025, Grupo Cinemex filed a motion to dismiss the Second Amended Complaint, Dkt. 103 ("Mot."); Dkt. 105 ("Br."). Plaintiff filed its opposition to the motion to dismiss on February 14, 2025, Dkt. 107 ("Opp."), and Grupo Cinemex filed its reply on March 6, 2025, Dkt. 108 ("Reply"). The Court held oral argument on the motion to dismiss on April 25, 2025. Dkt. 109.

## LEGAL STANDARD

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). "[B]ecause 'federal courts are courts of limited jurisdiction and, as such, lack the power to disregard such limits as have been imposed by the Constitution or Congress,' it is 'well established . . . that federal jurisdiction is not to be extended beyond the scope permitted by a strict construction of the statute upon which it rests.'" *N.Y. Metro. Reg'l Ctr., L.P. v. Mammoet USA Holding, Inc.*, 552 F. Supp. 3d 451, 454 (S.D.N.Y. 2021) (omission in original) (first quoting *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); and then quoting *Kresberg v. Int'l Paper Co.*, 149 F.2d 911, 913 (2d Cir. 1945)).

---

[2] The same day as the Court issued its decision on Plaintiff's motion to amend, Plaintiff commenced parallel proceedings against Grupo Cinemex in state court, asserting identical causes of action and seeking the same damages. *See 400 E. 62nd Props., LLC v. Grupo Cinemex, S.A. DE C.V.*, No. 655817/2024 (N.Y. Sup. Ct. filed Nov. 1, 2024); *see generally also* Dkt. 104-4. Plaintiff concedes that it filed the state court action because the Court "expressed concerns over . . . subject matter jurisdiction" and "given the complexity of the jurisdictional issues" in this matter. Opp. at 5.

3

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief." *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 65, 68 (2d Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

"A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." *De Masi v. Schumer*, 608 F. Supp. 2d 516, 523-24 (S.D.N.Y. 2009) (citation and alterations omitted).

## DISCUSSION

Grupo Cinemex raises three grounds for dismissing Plaintiff's Second Amended Complaint. First, Grupo Cinemex asserts that Plaintiff's claims fail for a lack of subject matter jurisdiction because Plaintiff's citizenship cannot be ascertained, rendering it "stateless" for the purposes of diversity jurisdiction. Br. at 9, 12. Second, and relatedly, Grupo Cinemex argues that Plaintiff's filing of a parallel state court action amounts to a concession that diversity jurisdiction is lacking in this case. *Id.* at 13-14. Finally, Grupo Cinemex argues that Plaintiff's claims are effectively precluded by a bankruptcy court order excusing Tenant's performance under a different movie theatre lease, *id.* at 15-16, and, alternatively, by the doctrines of impossibility and frustration of purpose, *id.* at 16-22.

Since "Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case," the Court begins with Grupo Cinemex's argument that complete diversity is destroyed by virtue of Plaintiff's "statelessness." *Kuriyan v. Schreiber*, No. 23-cv-02381 (JLR), 2024 WL 3539234, at *3 (S.D.N.Y. July 25, 2024) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)), *aff'd*, No. 24-2212, 2025 WL 1065957 (2d Cir. Apr. 9, 2025) (summary order).

I.  **Diversity Jurisdiction**

As relevant here, district courts have original jurisdiction over suits between "citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). It is undisputed that Defendant is a Mexican corporation with its principal place of business in Mexico, and is therefore a subject of a foreign state for purposes of complete diversity. *See* SAC ¶ 16; Opp. at 7. Plaintiff's citizenship, however, demands closer analysis. Plaintiff is an LLC and therefore "takes the citizenship of each of its members." *Bayerische Landesbank v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Therefore, the relevant inquiry when assessing Plaintiff's citizenship is the citizenship of Plaintiff's members. Moreover, if any of Plaintiff's members are themselves noncorporate entities, then Plaintiff "must allege the identity and citizenship of their members, proceeding up the chain of ownership until it has alleged the identity and citizenship of every individual and corporation with a direct or indirect interest in the LLC." *FD Special Opportunities V, LLC v. Silver Arch Cap. Partners, LLC*, No. 21-cv-00797 (JLR) (OTW), 2022 WL 16837967, at *1 (S.D.N.Y. Nov. 9, 2022) (citation omitted); *see also Wheels Up Partners LLC v. Exclusive Jets, LLC*, No. 23-cv-08077 (VSB), 2025 WL 950805, at *2 (S.D.N.Y. Mar. 28, 2025) ("The citizenship of the members of an LLC is traced all the way through — that is, when a member of an LLC is itself an LLC, the citizenship of the members of that LLC are relevant for diversity purposes, and so on." (citation omitted)).

Plaintiff's corporate structure is convoluted. Plaintiff is owned by eight Nevada trusts. SAC ¶ 4. The trustee of each of the eight Nevada trusts is HNB Trust Company, LLC ("HNB Trustee"), a Nevada LLC. *Id.* ¶ 7. HNB Trustee is in turn owned by four different Nevada trusts. *Id.* ¶ 9. But there's a wrinkle: HNB Trustee is also the trustee of those four trusts. *Id.* ¶ 12. This case therefore presents an unusual (and cyclical) party configuration — the trustee

5

of Plaintiff's members is itself an LLC. That LLC is in turn owned by four different trusts, for whom it is also the trustee.

Grupo Cinemex argues that this structure produces an "endless loop" whereby HNB Trustee's citizenship depends on the four trusts' state of citizenship, which in turn depends on HNB Trustee's state of citizenship. Br. at 10. Grupo Cinemex contends that, as a result, Plaintiff "cannot . . . demonstrate that it is a citizen of any state, and thus, there is no diversity jurisdiction here, necessitating dismissal with prejudice." *Id.* at 13. Plaintiff, however, argues that it should be considered a citizen of the place of its registration — Nevada — and that complete diversity therefore exists under section 1332(a)(2). Opp. at 14; *see also* Dkt. 106 ("Morrison Decl.") ¶ 15.

For the reasons set forth below, the Court agrees with Grupo Cinemex.

### A. Citizenship of Trusts

To appreciate the present dispute, it is worth briefly setting forth the current doctrinal framework for determining the citizenship of trusts. "Despite over two centuries of federal litigation involving trusts, the method for determining a trust's citizenship is long unsettled and the subject of much debate." *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017) (brackets and citation omitted). In a recent case, *Loubier*, the Second Circuit explained that there are three Supreme Court decisions relevant to determination of trust citizenship: *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), *Carden v. Arkoma Associates*, 494 U.S. 185 (1990), and *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016). 858 F.3d at 725. The Court briefly summarizes the holdings of those three Supreme Court decisions and *Loubier*.

First, in *Navarro*, plaintiffs were trustees of a business trust organized under Massachusetts law and sued Navarro Savings Association in their own name (that is, as

trustees). 446 U.S. at 459. The Supreme Court considered whether trustees of a business trust may invoke diversity jurisdiction based on their own citizenship rather than that of the business trust's beneficial shareholders. *Id.* at 459-60. The Supreme Court held that the citizenship of the named plaintiff-trustees was the relevant citizenship for diversity purposes (not the citizenship of the business trust's shareholders). *Id.* at 465. This was because the trustees possessed "certain customary powers to hold, manage, and dispose of assets, for the benefit of others," and their "control over the assets held in their names [was] real and substantial." *Id.* at 464-65. "In short," explained the Supreme Court, the trustees in that case were the "real parties to the controversy" and thus had the ability to "sue in their own right, without regard to the citizenship of the trust beneficiaries." *Id.* at 465-66.

A decade later, in *Carden*, the Supreme Court referenced *Navarro* in considering how to assess the citizenship of a limited partnership. 494 U.S. at 186, 191. The Supreme Court held that diversity jurisdiction in a suit involving a limited partnership "depends on the citizenships of 'all the members'" of such limited partnership. *Id.* at 195 (quoting *Chapman v. Barney*, 129 U.S. 677, 682 (1889)). The *Carden* Court distinguished *Navarro*, explaining that "*Navarro* had nothing to do with the citizenship of the 'trust,'" but rather "was a suit by the trustees in their own names." 494 U.S. at 192-93. The question raised in *Navarro*, as explained in *Carden*, was "the quite separate question whether parties that were undoubted 'citizens' (viz., natural persons) were the real parties to the controversy." *Id.* at 191.

Over a decade after that decision, in *Americold Realty Trust*, the Supreme Court discussed both *Navarro* and *Carden* to assess "how to determine the citizenship of a 'real estate investment trust,' an inanimate creature of Maryland law." 577 U.S. at 379. The Supreme Court explained that, except for a corporation which is considered a citizen of its state of incorporation, the Supreme Court has generally "adhered to our oft-repeated rule that

7

diversity jurisdiction in a suit by or against the entity depends on the citizenship of all its members," *id.* at 381 (brackets, quotation marks and citation omitted). The Supreme Court therefore concluded that the Maryland real estate investment trust ("REIT") took the citizenship of its shareholders, which were its "members." *Id.* at 382. The Supreme Court recognized that it had never expressly defined the term "members" but stated that it "ha[s] equated an association's members with its owners or the several persons composing such association." *Id.* at 381 (quotation marks and citation omitted). "Applying this principle," the Supreme Court "identified the members of a joint-stock company as its shareholders, the members of a partnership as its partners, the members of a union as the workers affiliated with it, and so on." *Id.* The Supreme Court looked to Maryland law, where it found that a Maryland REIT was an "unincorporated business trust or association in which property is held and managed for the benefit and profit of any person who may become a shareholder." *Id.* at 382 (quotation marks omitted). The shareholders of a Maryland REIT "appear[ed] to be in the same position as the shareholders of a joint-stock company or the partners of a limited partnership — both of whom [the Supreme Court] viewed as members of the relevant entities." *Id.* The *Americold* Court distinguished *Navarro* by once again reiterating that "*Navarro* had nothing to do with the citizenship of a trust" but rather "reaffirmed a separate rule that when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs — as is true of any natural person." *Id.* at 382-83 (quotation marks, brackets and citations omitted).

On the other hand, the Supreme Court also recognized that not *all* trusts were necessarily the same as the Maryland REIT in *Americold*. It explained:

> Americold's confusion regarding the citizenship of a trust is understandable and widely shared. The confusion can be explained, perhaps, by tradition. Traditionally, a trust was not considered a distinct legal entity, but a "fiduciary

8

>relationship" between multiple people. Such a relationship was not a thing that could be haled into court; legal proceedings involving a trust were brought by or against the trustees in their own name. And when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes. For a traditional trust, therefore, there is no need to determine its membership, as would be true if the trust, as an entity, were sued.

*Id.* at 383 (citations omitted). The Second Circuit, the Fourth Circuit, and the D.C. Circuit have each observed that the last quoted statement in *Americold* "may generate as many questions as it answers." *Loubier*, 858 F.3d at 728 (citation omitted); *Zoroastrian Ctr. & Darb-E Mehr v. Rustam Guiv Found.*, 822 F.3d 739, 749 (4th Cir. 2015) (same); *Wang ex rel. Wong v. New Mighty U.S. Tr.*, 843 F.3d 487, 493 (D.C. Cir. 2016); *see Loubier*, 858 F.3d at 728 ("Does it mean that there is never a need to determine the 'membership' of a traditional trust because its citizenship is always that of its trustee? Or, does it mean that every time a trust is sued in its own name, its citizenship is the citizenship of all its members?").

The Second Circuit has provided direct guidance on this question in *Loubier*. 858 F.3d at 725-732. In *Loubier*, "[n]either side dispute[d] that the party trusts . . . are traditional common law trusts, which created fiduciary relationships for purposes of estate planning." *Id.* at 729. The Second Circuit concluded that "the rule reiterated by the Supreme Court in *Americold* and *Carden* — ascribing to an unincorporated entity the citizenship of all its members — may apply to any number of trusts recognized in law as distinct juridical entities. But it does not apply to a traditional trust that establishes only a fiduciary relationship and that cannot sue or be sued in its own right." *Id.* Thus, because the trusts at issue in *Loubier* were traditional trusts rather than distinct juridical entities, the relevant inquiry for diversity analysis was "the citizenship of the trustees holding the legal right to sue on the behalf of the trusts, not that of beneficiaries." *Id.* at 729-30.

9

The Second Circuit noted that "the terms of the[] trusts reinforce[d] [the court's] conclusion." *Id.* at 729. First, the terms of the trusts at issue did not "authorize suits in the name of either the trust or the trustees," unlike the trusts in *Navarro*. *Id.* And unlike the Maryland REIT in *Americold*, the trusts did not "pertain to shareholders" who held "ownership interests" in trust property and who had "votes in the trust by virtue of their shares of beneficial interest." *Id.* (quoting *Americold*, 577 U.S. at 382). Instead, the trusts in *Loubier* had "vested and contingent beneficiaries with no present ownership interest in trust property and no power over the trusts' administration, disbursements, or investments." *Id.* at 729-30. Additionally, it did not appear that the trusts themselves were entities that could be sued "except through their trustees." *Id.* at 730.

In sum, as the foregoing binding authorities dictate, to determine trust citizenship, the Court must determine whether the trusts are "recognized in law as distinct juridical entities" or are "traditional trust[s] that establish[] only a fiduciary relationship and that cannot sue or be sued in [their] own right." *Id.* at 729. "For 'traditional trusts,' which 'establish a mere fiduciary relationship and, as such, [are] incapable of being sued in [their] own name,' citizenship is determined by the citizenship of each of the trust's trustees." *FD Special Opportunities*, 2022 WL 16837967, at *1 (alterations in original) (quoting *Loubier*, 858 F.3d at 729, 731-32). "For non-traditional trusts, citizenship is generally based on the citizenship of all of the trust's members, including its beneficiaries." *Id.*

B. Analysis

Turning, then, to the threshold issue of the nature of the trusts, neither side disputes that the trusts at issue here are traditional trusts. *See* Br. at 10; Morrison Decl. ¶ 6. This is supported by the SAC's allegations that the trusts were "all set up for estate planning purposes," SAC ¶ 5, and that none of the trusts were "set up as a device for profit making

10

through the combination of capital contributed by various partners," *id.* ¶ 6; *see also id.* ¶¶ 10-11. The parties' understanding also aligns with the Court's preliminary findings at the hearing on Plaintiff's motion to amend. Although the Court did not then definitively decide the issue, the Court acknowledged — based on the record before it — that the trusts resembled traditional trusts. *See* Tr. at 42:1-8. Specifically, the Court observed that the underlying trust instruments appeared to be for the benefit of a single family, and did not appear to "authorize suits in the name of the trust." *Id.* at 38:12-18. Moreover, the Court noted that "the trusts here do not 'pertain to shareholders who own ownership interests in trust property,' nor do its members appear to have the rights to 'vote in the trust by virtue of their shares of beneficial interest,' unlike the Maryland REIT at issue in *Americold*." *Id.* at 38:21-39:1 (quoting *Americold*, 577 U.S. at 382). Both parties confirmed their agreement at oral argument that Plaintiff's trusts are traditional trusts. Therefore, the Court affirms its earlier conclusion that Plaintiff is owned by traditional trusts. To determine the citizenship of the trusts that are Plaintiff's members, the Court must now turn to the citizenship of the trusts' respective trustees.

This next step in the jurisdictional analysis, however, presents a problem. Plaintiff's members are eight Nevada trusts whose citizenship is determined by their trustee. The trustee of the eight Nevada trusts is HNB Trustee. Because HNB Trustee is an LLC, its citizenship is determined by its members. The members of HNB Trustee are four additional Nevada trusts. The citizenship of the four Nevada trusts is determined by the citizenship of their trustee. The trustee of the four Nevada trusts is, however, also HNB Trustee. Therefore, it is impossible to determine Plaintiff's citizenship, because HNB Trustee is also the trustee of the four trusts that own it. Accordingly, HNB Trustee's citizenship depends on the citizenship of its members (the four Nevada trusts), and the four trusts' citizenship in turn depends on the

11

citizenship of their trustee (HNB Trustee). In other words, there is an "endless loop in the analysis between HNB Trustee and the four traditional trusts that constitute its members." Br. at 2. Both parties agree that the ownership structure here presents a loop, and Defendant provides a helpful diagram illustrating this jurisdictional quagmire:



*Id.* at 11. Neither party has located, nor is this Court aware of, a case that deals with an ownership structure that creates a loop of this nature.

The Court therefore examines this structure as a matter of first impression and concludes that it does not have subject matter jurisdiction over this dispute. Since it is impossible to determine HNB Trustee's state of citizenship because of the endless loop, HNB Trustee must be treated as a "stateless" entity. In other words, the impossibility of determining HNB Trustee's state of citizenship means that it is effectively a citizen of no state. This, in turn, produces upstream effects: Plaintiff itself is rendered stateless and is therefore prevented from invoking section 1332. *See, e.g.*, *Herrick Co. v. SCS Commc'ns*, 251 F.3d 315, 322 (2d Cir. 2001) (observing that if any member of a partnership is stateless, then complete diversity is destroyed); *Wells Fargo Bank, Nat'l Ass'n v. 700 Milford Holdings*

*LLC*, No. 21-cv-06059 (JPC), 2022 WL 3020147, at *5 (S.D.N.Y. July 29, 2022) ("[B]ecause [the limited partnership] has members that are not citizens of any state, or of any foreign state, it is likewise not a citizen of any state, or of any foreign state, and cannot be diverse.").

While the citizenship loop presented by Plaintiff's circular trust structure seemingly poses a novel jurisdictional question, the basic proposition that certain parties are "stateless" for purposes of diversity jurisdiction is not new.  Courts have held, for instance, that "[b]ecause the citizenship of a limited liability company is the citizenship of its members at the time of filing, a company that has no members at that time is effectively stateless" and therefore "cannot meet the Section 1332(a)(1) requirement that the dispute be between citizens of different states."  13E Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3611 n.26 (3d ed. Apr. 2025) (collecting cases); *see, e.g.*, *Lehmann v. Davidson Hotel Co.*, No. 15-cv-00319, 2015 WL 867799,  at *3 (E.D. Mo. Feb. 27, 2015) (holding that defendant LLC was "rendered 'stateless' for purposes of federal diversity jurisdiction because its sole member" — also an LLC — "ha[d] no members"); *ConnectU LLC v. Zuckerburg*, 482 F. Supp. 2d 3, 27 (D. Mass. 2007) ("Given that an LLC is a citizen of the state or states of which its members are citizens, having no members effectively rendered [plaintiff] stateless when the complaint was filed," and therefore, "[p]laintiff cannot meet the requirements of Title 28 U.S.C. § 1332(a)(1)."), *rev'd on other grounds*, 522 F.3d 82 (1st Cir. 2008); *State Farm Fire & Cas. Co. & Electrolux Home Prods., Inc.*, 397 F. Supp. 3d 749, 752 (E.D. Pa. 2019) (observing that if defendant-LLC was "deemed to have no members, it is then stateless and . . . there is no basis for finding diversity of citizenship as to it"); *Nat'l WW II Museum, Inc. v. Talisman Cas. Ins. Co.*, No. 19-cv-13279, 2020 WL 563635, at *2 (E.D. La. Feb. 5, 2020) ("Diversity jurisdiction does not exist because an LLC with no members cannot meet the Section 1332(a)(1) requirement that the dispute be between citizens of different

states."); *Hankins v. DoubleTree Mgmt., LLC*, No. 19-cv-08698, 2021 WL 754033, at *4 n.7 (D.N.J. Feb. 26, 2021) (similar). The same logic applies here: because the citizenship of the trusts cannot be determined, Plaintiff is rendered "stateless" for purposes of diversity jurisdiction and therefore cannot be a "citizen of a State" under section 1332(a)(2).

There are other examples of parties and entities that are "stateless" and therefore unable to avail themselves of diversity jurisdiction. For example, "United States citizens 'domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state,' so that '§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties.'" *Herrick*, 251 F.3d at 322 (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990)); *see also Buffy v. Milstein,* No. 24-cv-03091 (MKV), 2024 WL 3638697, at *2 (S.D.N.Y. Aug. 2, 2024) ("When a United States dual citizen is domiciled abroad, she is considered neither a citizen of any state within the United States, nor a citizen or subject of a foreign state."). Federally chartered institutions are likewise deemed, as a general matter, not to be citizens of any state and are therefore unable to invoke section 1332. Indeed, "[t]he general rule with respect to federal credit unions is that . . . they are not considered to be a citizen of any particular state for the purpose of establishing diversity of citizenship. Rather, they are considered stateless national citizens that are not amenable to § 1332(a) jurisdiction." *Broadbridge Fin. Sols., Inc. v. CNBS, LLC*, No. 15-cv-04978 (PAC), 2016 WL 1222339, at *1 (S.D.N.Y. Mar. 23, 2016) (alterations adopted) (citations and quotation marks omitted); *see also Parks Heritage Fed. Credit Union v. Fiserv Sols., Inc.*, No. 16-cv-07734 (KBF), 2017 WL 74280, at *6 (S.D.N.Y. Jan. 4, 2017) ("[M]any courts have held that federally chartered corporations with bases of operations in a particular state are nevertheless stateless, national citizens ineligible for diversity jurisdiction.").

While not dispositive of the novel jurisdictional question presented by this particular case, these precedents nevertheless establish that certain parties may be so configured as to not be considered citizens of any state under section 1332. Plaintiff, by virtue of its members' cyclical trust-trustee structure, falls within this category of litigants.

Plaintiff's contention that HNB Trustee is a citizen of the state where it is registered — Nevada — misconstrues the law. Opp. at 14. The state of HNB Trustee's incorporation would be the appropriate test if it were a corporation. *See* 28 U.S.C. § 1332(c). But HNB Trustee is an LLC. As a result, its state of organization and principal place of business are irrelevant for purposes of the jurisdictional analysis. *See Bayerische*, 692 F.3d at 49 (observing that a "limited liability company . . . takes the citizenship of each of its members"); *Lamassu Holdings, L.L.C. v. Thompson*, No. 12-cv-03724 (BSJ), 2012 WL 13396106, at *2 (S.D.N.Y. Oct. 10, 2012) ("Since a limited liability company has the citizenship of each of its members, allegations about the LLC's state of incorporation and principal place of business are insufficient to resolve whether there is diversity between the parties."). Plaintiff's contention that the LLC's state of registration is nevertheless the appropriate reference point under these unusual circumstances because this particular trust structure was organized under Nevada laws — and is therefore authorized by Nevada law — is also meritless. Plaintiff provides no authority for this position, and the aforementioned precedent pertaining to LLCs without members holds to the contrary. The fact that the trust structure was organized under Nevada law does not address the entity's citizenship for purposes of federal diversity jurisdiction. As noted above, federal courts have consistently held that even where states have authorized LLCs to exist without any members under governing state law, those LLCs still remained citizens of no state, defeating diversity jurisdiction. *See, e.g., Lehmann*, 2015 WL 867799, at *2 & n.1 (observing that certain state laws authorize LLCs with no members but

nevertheless holding that an LLC without members was stateless for purposes of diversity jurisdiction).

Plaintiff also asserts, without citation to any authority, that "[t]his is not and should not be a case where a United States property owner has no citizenship for diversity purposes, and no access to the Federal Courts to litigate rights against a foreign entity which has consented to jurisdiction of the Court of the State of New York." Opp. at 14. That some entities are precluded from litigating their case in the federal courts is, however, the necessary result of applying section 1332 as written. As the Second Circuit has advised, while "scrupulous enforcement of these jurisdictional rules may make it more difficult for many business entities to sue or to be sued in federal court under diversity jurisdiction," when "the citizenship of an LLC or LP is in question, a district court may not proceed to the merits without first determining whether it has subject-matter jurisdiction." *Platinum-Montaur Life Scis., LLC v. Navidea Biopharms., Inc.*, 943 F.3d 613, 619 (2d Cir. 2019). Plaintiff presumably understood the difficulty that it faced in meeting its burden to establish subject matter jurisdiction in federal court when it filed a duplicate action in state court in November 2024 — after the Court initially expressed its concerns over subject matter jurisdiction.

Having allowed Plaintiff to amend and present its strongest arguments in favor of subject matter jurisdiction, it is still the case that Plaintiff's downstream company structure is such that it cannot establish diversity of citizenship under 28 U.S.C. § 1332. Under these circumstances, dismissal for a lack of subject matter jurisdiction is warranted. The Court therefore dismisses Plaintiff's claims for a lack of diversity jurisdiction without prejudice. *See, e.g.*, *Katz v. Donna Karan Co.*, 872 F.3d 114, 121 (2d Cir. 2017) ("when a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives federal courts of the power to dismiss [the] case with prejudice.'" (alteration in original) (quoting *Hernandez v.*

*Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999))); *Lue v. JPMorgan Chase & Co.*, No. 21-892, 2022 WL 1146219, at *1 (2d Cir. Apr. 19, 2022) (summary order) ("If the district court determines that it lacks diversity jurisdiction, it must dismiss the case without prejudice.").[3]

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 103 and to CLOSE this action.

Dated: April 28, 2025
       New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

---

[3] Having determined that it lacks subject matter jurisdiction over this matter, the Court does not reach Grupo Cinemex's alternative arguments on the merits.